**MCGUIREWOODS LLP**
Alicia A. Baiardo (SBN 254228)
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111
Telephone: (415) 844-9944
E-Mail: abaiardo@mcguirewoods.com

**MCGUIREWOODS LLP**
Piper A. Waldron (SBN 291482)
1800 Century Park East, 8th Floor
Los Angeles, California 90067
Telephone: (310) 315-8200
E-Mail: pwaldron@mcguirewoods.com

Attorneys for *Specially Appearing* Defendants TannerGap, Inc. and Tanner Pharma UK Limited

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC,<br><br>Plaintiffs,<br><br>vs.<br><br>TANNERGAP, Inc.; TANNER PHARMA UK LIMITED; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO. 5:21-cv-03017-NC<br><br>***SPECIALLY APPEARING* DEFENDANTS TANNERGAP, INC. AND TANNER PHARMA UK LIMITED'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>[Fed. R. Civ. Proc. 12(b)(2)]<br><br>Hearing Date:    June 16, 2021<br>Hearing Time:    1:00 p.m.<br>Hearing Location: Courtroom 5<br><br>Magistrate Judge Nathanael M. Cousins |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 5
I.    INTRODUCTION ................................................................................................................. 5
II.    ARGUMENT ....................................................................................................................... 6
    A.    Defendants Have Not Purposefully Availed Themselves of the Privilege of Conducting and Profiting from Business in California ............................................ 7
        1.    Defendants did not initiate contact with Plaintiff because of ties to California ................................................................................................... 8
        2.    The "economic realities" of the Agreement were not directed at California ................................................................................................... 9
        3.    Plaintiffs' joint venture theory is misplaced ............................................... 12
        4.    The terms of the Agreement do not weigh in favor of purposeful availment ..................................................................................................... 13
        5.    Defendants' profits under the Agreement were not dependent on California ..................................................................................................... 14
    B.    Plaintiffs' Claims Do Not Arise from Defendants' Activities in California ......... 14
    C.    The Exercise of Jurisdiction in California Is Not Reasonable and Proper ............ 15
III.    CONCLUSION ................................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aref v. Arab Rep. of Egypt*,
  1994 WL 444600 (9th Cir. 1994) (Unpub. Disp.) .................................................................. 13

*Axiom Foods, Inc. v. Acerchem International, Inc.*,
  874 F.3d 1064 (9th Cir. 2017) ................................................................................................ 7

*Baca Gardening & Landscaping, Inc. v. Prizm Vinyl Corp.*,
  2008 WL 4889030 (C.D. Cal. Nov. 12, 2008) ..................................................................... 15

*Boschetto v. Hansing*,
  539 F.3d 1011 (9th Cir. 2008) ................................................................................................ 7

*IPS Shared Technical Services, Inc. v. Overwatch Systems, Ltd.*,
  No. C-14-1112 EMC, 2014 WL 2110341 (N.D. Cal. May 20, 2014) ............................ 10, 11

*Longyu Intern. Inc. v. E-Lot Electronics Recycling Inc.*,
  No. 2:13-cv-07086-CAS, 2014 WL 1682811 (C.D. Cal. Apr. 29, 2014) .............................. 14

*McGlinchy v. Shell Chem. Co.*,
  845 F.2d 802 (9th Cir. 1988) ................................................................................... 5, 8, 9, 10

*Nocher Enterprises, Inc. v. Aventus Outreach, LLC*,
  No. CV-18-3897-RSWL, 2018 WL 6067438 (C.D. Cal. Nov. 16, 2018) ............................... 8

*Picot v. Weston*,
  780 F.3d 1206 (9th Cir. 2015) .......................................................................................... 7, 14

*Republic Int'l Corp. v. Amco Eng'rs, Inc.*,
  516 F.2d 161 (9th Cir. 1975) .................................................................................................. 9

*Roth v. Garcia Marquez*,
  942 F.2d 617 (9th Cir. 1991) ................................................................................................ 11

*Sarkis v. Lajcak*,
  No. C-08-01911-RMW, 2009 WL 3367069 (N.D. Cal. Oct. 15, 2009), aff'd,
  425 F.App'x 557 (9th Cir. 2011) .......................................................................................... 10

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ................................................................................................ 15

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990) ......................................................................................... 5, 13

*Vuori v. Grasshopper Capital LLC*,
  No. 17-CV-06362-JCS, 2018 WL 1014633 (N.D. Cal. Feb. 22, 2018) .................................. 8

*Walden v. Fiore*,
  571 U.S. 277 (2014) ................................................................................................... 7, 15

*Wickline v. United Micronesia*,
  No. C-14-00192-SI, 2014 WL 2938713 (N.D. Cal. June 30, 2014) ............................... 11, 12

*Williams v. Yamaha Motor Co. Ltd.*,
  851 F.3d 1015 (9th Cir. 2017) ......................................................................................... 6, 14

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(2) .............................................................................................. 16

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Plaintiff FS Medical Supplies, LLC's ("Plaintiff") Opposition focuses on *Plaintiff's* conduct and *Plaintiff's* physical presence in California. But this misconstrues the fundamental principle of personal jurisdiction—that it is the *defendant's* intentional conduct, not the plaintiff's, which creates the necessary contacts with the forum to find jurisdiction exists over a defendant. Indeed, Defendants TannerGap, Inc. and Tanner Pharma UK Limited (collectively, "Defendants") must have "performed some type of affirmative conduct which allows or promotes the transaction of business within [California]" to find jurisdiction is proper. *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting *Sinatra v. Nat'l Enquirer, Inc.* 854 F.2d 1191, 1195 (9th Cir. 1988)). "In the absence of contractual obligations by [a defendant], such as sale of goods or services to California residents or a deliberate presence in California, [a plaintiff's unilateral] activity is insufficient to satisfy part one of the 'minimum contacts' test." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988). Similarly, here, the Agreement makes no provision for the sale of goods or services to California residents; in fact, it provides exactly the opposite—that products will be supplied outside the United States. *See* ECF No. 5-1 at ¶¶ 12-15. As discussed herein, there is no "affirmative conduct" on the part of Defendants in California. As a result, Plaintiff cannot meet its burden of demonstrating that jurisdiction over these Defendants in California would be appropriate.

As set forth in Defendants' Motion to Dismiss (the "Motion"), the facts demonstrate that Defendants lack the constitutionally required "minimum contacts" with California. For example, Defendants do not conduct business in California, they do not have an agent for service of process in California, they do not have employees in California, they do not pay California taxes, and they do not own real property in California. *See* ECF No. 5 at 3:8-20. Nothing in Plaintiff's Opposition contradicts these facts. Instead, Plaintiff focuses on *Plaintiff's* presence in California but falls short of describing Defendants' presence in the state. Moreover, and importantly, the parties' Distribution Agreement (the "Agreement") makes clear that the supply and sale of goods under the Agreement was to occur *outside* of California. Again, Plaintiff cannot and does not

dispute this fact.

In its Opposition, Plaintiff argues that because Defendants entered into the Agreement with a California party, sent payments to Plaintiff pursuant to the Agreement, and agreed to profit share with Plaintiff, Defendants are necessarily subject to California jurisdiction. However, as explained herein, these factors are not controlling, let alone dispositive, on the personal jurisdiction issue. Ultimately, Plaintiff's unilateral conduct in California is insufficient to confer personal jurisdiction, and Defendants' Motion should be granted.

## II.  ARGUMENT

The Court can only exercise specific jurisdiction over Defendants if three requirements are satisfied: (1) Defendants purposefully availed themselves of the benefits of California's laws; (2) Plaintiff's claim arises out of or related to Defendants' California-related activities; and (3) the exercise of personal jurisdiction comports with fair play and substantial justice. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017).

With respect to the first requirement, Plaintiff relies on several factors to argue that Defendants purposefully availed themselves of privileges within California. In support of their purposeful availment argument, Plaintiff points to the following facts: Defendants initiated contact with Plaintiff, Defendants agreed to share profits with Plaintiff, Plaintiff and Defendants should be considered a "joint venture," Defendants sent payments to California-based Plaintiff and Defendants' profits under the Agreement were dependent on California. However, as discussed herein, Plaintiff's analysis of these factors is flawed, and Plaintiff cannot meet its burden to establish purposeful availment because none of these facts show Defendants purposefully availed themselves of the forum sufficient to confer jurisdiction.

Plaintiff also cannot meet its burden under the second prong. Specifically, Plaintiff cannot show that its claim arises out of Defendants' California-related activities—because there were none.

Finally, even assuming Plaintiff could meet its burden to establish the first two requirements, the exercise of personal jurisdiction over Defendants here would not be reasonable. As discussed below, Defendants' Motion should be granted.

**A.     Defendants Have Not Purposefully Availed Themselves of the Privilege of Conducting and Profiting from Business in California.**

To establish purposeful availment, it is "the ***defendant's*** conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over [it]." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emph. added). Importantly, "the fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract." *Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015); *see also Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008) ("a contract alone does not automatically establish minimum contacts in the plaintiff's home forum").

Plaintiff's Opposition argues extensively that Defendants' "knowledge" of Plaintiff's location in California is sufficient to establish personal jurisdiction. *See* ECF No. 10 at 2:5-6 ("[Defendants] knew that [Plaintiff] was located in California"); ECF No. 10 at 2:12 (Defendants "knew [Plaintiff] was located in California"); ECF No. 10 at 3:7 (Defendants "reached out to [Plaintiff], whom it knew to be in California…"); ECF No. 10 at 5:9-10 (Defendants "clearly knew that Mr. Cagan…was located in California, even going so far as to coordinate calls to mitigate between time differences"); ECF No. 10 at 8:6-7 (Defendants "knew that [Plaintiff] was located in California and would conduct its operations from California"); ECF No. 10 at 17:9-10 (Defendants "knew that [Plaintiff] operated from within California…"). Despite Plaintiff's repeated reliance on Defendants' purported "knowledge" of Plaintiff's location, such knowledge does not weigh heavily on the personal jurisdiction analysis, if at all. *See Axiom Foods, Inc. v. Acerchem International, Inc.*, 874 F.3d 1064, 1069-70 (9th Cir. 2017) ("[W]e must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum."); *see also Walden*, 571 U.S. at 289 ("Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis.").

*1. Defendants did not initiate contact with Plaintiff because of ties to California.*

Plaintiff relies on *Vuori v. Grasshopper Capital LLC*, No. 17-CV-06362-JCS, 2018 WL 1014633 (N.D. Cal. Feb. 22, 2018), to argue that because Defendants knew Plaintiff was located in California and would conduct its operations from there, Defendants must have purposefully availed themselves. *See* ECF No. 10 at 8:6-12. However, in reaching its conclusion, the Court in *Vuori* relied on several factors that are conspicuously absent here: (1) defendants were "interested in [plaintiff's] ties to Silicon Valley;" (2) defendants specifically requested that plaintiff "reach[] out to potential investors in California;" and (3) defendant's statement "that he believed [plaintiff's] 'connections' would allow Defendants to reach their desired volume of investment." *Vuori*, 2018 WL 1014633, at *13. In *Vuori*, the defendants initiated contact with the plaintiff in order to specifically derive a benefit from the plaintiff's California connections. Here, on the other hand, Defendants initiated contact with Plaintiff to create a "global" sales channel network, not a California-based one (with products to be sourced by Plaintiff from "international markets"), and Defendants certainly did not reach out to Plaintiff in order to utilize any of Plaintiff's California-specific connections. *See, e.g.*, *Nocher Enterprises, Inc. v. Aventus Outreach, LLC*, No. CV-18-3897-RSWL (JEMx), 2018 WL 6067438, at *5 (C.D. Cal. Nov. 16, 2018) (finding purposeful availment where defendants did business with plaintiff "because of the anticipated large volume of business it expected to generate" from the plaintiff's California relationships). Thus, Plaintiff's reliance on *Vuori* is inapposite.

Furthermore, Plaintiff admits that the negotiations were conducted virtually (i.e., *not in California*). *See* ECF No. 10 at 2:4-5. Thus, aside from the fact that Plaintiff was located in California, nothing about the parties' negotiations suggests that Defendants intended to avail themselves of the rights and privileges of California. Plaintiff also does not deny that the Agreement—by its very terms—was to be performed, and was performed,[1] outside of California.

Significantly, in *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816 (9th Cir. 1988), the

---

[1] Defendants reserve their right to raise any defenses regarding the adequacy of Plaintiff's performance under the terms of the Agreement.

Ninth Circuit found that "[i]n the absence of contractual obligations by [a defendant], such as sale of goods or services to California residents or a deliberate presence in California, [a plaintiff's unilateral] activity is insufficient to satisfy part one of the 'minimum contacts' test." Similarly, here, the Agreement makes no provision for the sale of goods or services to California residents; in fact, it provides exactly the opposite—that products will be supplied outside the United States. *See* ECF No. 5-1 at ¶¶ 12-15.

In sum, the Agreement was in no way "purposefully directed" to have any "effect," much less a continuing one, in California. *McGlinchy*, 845 F.2d at 817. That Plaintiff signed the Agreement in California does not change the analysis.[2] *Id*. at 816 (finding "the formality of [the plaintiff's] signing the contract in California [could not] establish jurisdiction"). Plaintiff's *own* conduct within the forum state is insufficient to establish "purposeful availment" by Defendants. *See id.* at 816-17; *see also Republic Int'l Corp. v. Amco Eng'rs, Inc.*, 516 F.2d 161, 167 (9th Cir. 1975) (noting that a plaintiff's performance in California cannot give rise to jurisdiction over a nonresident defendant because it is the *defendant's activity* that must provide the basis for jurisdiction). Therefore, Plaintiff has failed to meet its burden to establish purposeful availment, and the Motion should be granted for lack of Defendants' sufficient minimum contacts with California.

2. <u>The "economic realities" of the Agreement were not directed at California</u>.

Plaintiff argues that Defendants are subject to personal jurisdiction because the "economic realities" of the Agreement inextricably linked Defendants' financial prospects to California. *See* ECF No. 10 at 8-10. This argument fails for several reasons.

First, as noted above, Plaintiff improperly relies heavily on its own, unilateral conduct. Specifically, Plaintiff argues that it used California utilities, was registered with the California Secretary of State, paid taxes in California, and employed California workers. *See* ECF No. 10 at

---

[2] Defendants lack personal knowledge regarding Mr. Cagan's physical location at the time he signed the Agreement and therefore rely solely on Mr. Cagan's declaration that he executed the Agreement while in California.

2:19-21.  As a threshold issue, none of this conduct by Plaintiff was a direct result of its contract with Defendants.  But even more importantly, "courts have repeatedly held that the unilateral activity of a plaintiff cannot confer jurisdiction." *IPS Shared Technical Services, Inc. v. Overwatch Systems, Ltd.*, No. C-14-1112 EMC, 2014 WL 2110341, at *3 (N.D. Cal. May 20, 2014); *see also McGlinchy*, 845 F.2d at 816-17 (noting that "appellants' statement that they 'performed 90% of [their] activities in the Bay Area,' even if accurate, describes only unilateral activity").

Second, the mere act of sending payments to California is not sufficient to justify the exercise of personal jurisdiction here.  *Sarkis v. Lajcak*, No. C-08-01911-RMW, 2009 WL 3367069, at *4 (N.D. Cal. Oct. 15, 2009), aff'd, 425 F.App'x 557 (9th Cir. 2011) (defendant's sending monthly payments to California was not sufficient to exercise personal jurisdiction "when the material and essentially all of the performance of the contract was in Bosnia"); *see also IPS Shared*, 2014 WL 2110341, at *3 ("That Overwatch sent payments to IPS in California is far from being dispositive") (citing *Freudensprung v. Offshore Tech. Svcs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (stating that "the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract…are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant")).

Third, Plaintiff largely ignores the fact that the Agreement required performance *outside* of California, suggesting that the clear contractual language has no bearing on the personal jurisdiction analysis.[3]  But *IPS Shared* contradicts Plaintiff's suggestion.  There, although the contract was negotiated in California, "the contract on its face required performance outside of the state, *i.e.*, in Colorado." *IPS Shared*, 2014 WL 2110341, at *3.  Moreover, "all deliverables…were to be sent to…Texas." *Id*.  Importantly, the Court found that "[t]hese facts

---

[3] Plaintiff's Opposition argues that Defendants' focus on the location for Plaintiff's supply of goods pursuant to the Agreement is "misleading" and "misapprehends the issue." *See* ECF No. 10 at 16:19, 2:15-16.

weigh strongly against purposeful availment." *Id*. Even though IPS argued that the contract was negotiated in California and that "ongoing, regular administration of the Contract was performed in California," the plain language of the contract was controlling. Similarly, here, although Plaintiff argues that it performed its side of the Agreement in California, Plaintiff cannot escape the fact that the "contract on its face require[s] performance outside of the state." *See* ECF No. 5 at 8 (pursuant to the Agreement, Plaintiff was to supply Defendants with products for "any country in the world outside of the United States" and would supply "coronavirus antigen tests for sale to the United Kingdom Department of Health and Social Care").

Finally, in its Opposition, Plaintiff relies on *Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991), to argue that there was purposeful availment because the economic reality of the Agreement is that Defendants expected to derive significant profits from Plaintiff's operations in California. But Plaintiff's reliance on *Roth* is misplaced. In *Roth*, the Ninth Circuit found the defendant subject to specific personal jurisdiction because "most of the work" under the contract "would have been performed in California," including "all of the editing, production work, and advertising." *Id*. at 622. Here, however, the plain language of the Agreement confirms that "most of the work" (indeed, *all* of the work) was to occur outside the United States.

*Wickline v. United Micronesia*, No. C-14-00192-SI, 2014 WL 2938713, at *8 (N.D. Cal. June 30, 2014), distinguishes *Roth* by finding "the results of the performance" to be a key factor in the personal jurisdiction analysis. In *Wickline*, the plaintiff argued the contract contemplated that the majority of his duties and obligations under the contract would be performed in California,[4] just as Plaintiff argues here. *Id*. at *7. However, "the fact that plaintiff performed the majority of his duties in California, his place of residence, through the use of a phone or email merely constitutes unilateral activity and is insufficient to establish purposeful availment." *Id*. Moreover, the parties' performance under the agreements was directed at Micronesia businesses and

---

[4] The plaintiff in *Wickline* was a California resident and performed some of his duties in California; additionally, the defendant paid for plaintiff's California telephone and cell phones. *Id*. at *1-2.

Micronesia residents, and it did not "promote the transaction of business within California." *Id*. Thus, the "economic reality" of the agreements was that the contracts' subject was activities in Micronesia, not in California. *Id*. Similarly, here, "the results of the performance" under the Agreement are to occur outside of California, since the Agreement specifically calls for the sale of products *outside* the United States. *See* ECF No. 5-1, ¶ 12, Ex. A at Section A; ¶ 5 (under the Agreement Plaintiff will supply products for the "Territory," which is defined to mean "any country in the world outside of the United States"). Thus, contrary to Plaintiff's argument, the "economic reality" of the Agreement does not contemplate activities in California.

      3. *Plaintiffs' joint venture theory is misplaced*.

  Plaintiff's Opposition argues that the parties' contractual Agreement is sufficient to "qualif[y] as a joint undertaking," and as a result is sufficient to impute Plaintiff's California contacts to Defendants. *See* ECF No. 10 at 12:12-13. This theory is misplaced for a multitude of reasons.

  As an initial matter, the parties' Agreement provides as follows:

> **21. Independent Contractors.** The Parties are independent contractors. ***Nothing in this Agreement shall be construed to create any venture or entity that is inconsistent with the Parties' status as independent contractors.*** Neither Party shall take any action or make any representation that would suggest that any relationship exists between the Parties other than that of independent contractors. Neither Party shall have any right or authority to assume or create any obligations on behalf of the other Party, express or implied, nor shall either Party represent to any person that the Party has such authority or that the Party serves the other Party in any capacity other than as an independent contractor.

*See* ECF No. 5-2 (emph. added). Plaintiff's Opposition omits a discussion of this critical provision. *See generally*, ECF No. 10. The language of Section 21 makes clear that the parties specifically intended to *avoid* the creation of a joint venture, partnership, or any other entity "inconsistent with the Parties' status as independent contractors." Plaintiff seeks to maintain its status as an independent contractor for purposes of the Agreement, while at the same time claiming it has entered into a joint venture with Defendants in order to haul Defendants into California courts. Plaintiff cannot have it both ways, and the joint venture theory should be

rejected.

Setting aside the explicit language of the parties' Agreement, Plaintiff relies entirely on cases outside of California which are not binding on this Court.[5]  Presumably Plaintiff does so because Ninth Circuit authority confirms that "a partner's actions…may not be imputed to the other partners" and "the district court has jurisdiction over only those individual partners who personally established the requisite minimum contacts with California." *Sher v. Johnson*, 911 F.2d 1357, 1366 (9th Cir. 1990); *see also Aref v. Arab Rep. of Egypt*, 1994 WL 444600, at *1 (9th Cir. 1994) (Unpub. Disp.) ("Bentley's two meetings with clients in California can be imputed to the law office…but the law is clear that these contacts are insufficient for jurisdiction.").  Thus, even under Plaintiff's theory (which is contradicted by the express terms of the parties' Agreement), Plaintiff would still have to show that Defendants have "the requisite minimum contacts with California."  Because those contacts are absent here, the Court lacks personal jurisdiction, and Defendants' Motion should be granted.

    4. *<u>The terms of the Agreement do not weigh in favor of purposeful availment</u>*.

Next, Plaintiff argues that the terms of the Agreement gave Defendants "notice that legal proceedings could occur in California." *See* ECF No. 10 at 12:23.  Tellingly, Plaintiff does not cite to any provision in the Agreement providing that the venue of any dispute would be California—because such a provision does not exist.  Even the Agreement's "Governing Law" section provides that the laws of Delaware, not California, shall apply. *See* ECF No. 5-2 at ¶ 30.  Although the Agreement provides that written notice shall be sent to Plaintiff at its California address, by Plaintiff's own admission, this factor is not an important one, and is certainly not a dispositive one. *See* ECF No. 10 at 13:3-4 (citing *LocusPoint Networks, LLC v. D.T.V., LLC*, No. 3:14-cv-01278-JSC, 2014 WL 3836792 (N.D. Cal. Aug. 1, 2014), for the proposition that

---

[5] To support its joint venture theory, Plaintiff relies on cases in the Northern District of Illinois, the Eastern District of Louisiana, the Southern District of New York, the District Court of Kansas, and the District Court of Arizona. *See* ECF No. 10 at 10-12.  Aside from citing a California state court case for the definition of a "joint venture," Plaintiff's argument is unsupported by any California case law whatsoever.

agreement terms requiring notice to be sent to California address only "weighs *slightly* in favor of a finding of purposeful availment."); *see also Longyu Intern. Inc. v. E-Lot Electronics Recycling Inc.*, No. 2:13-cv-07086-CAS, 2014 WL 1682811, at *5 (C.D. Cal. Apr. 29, 2014) (noting that invoices sent to California address only "slightly favor[] a finding of purposeful availment").

5. *Defendants' profits under the Agreement were not dependent on California.*

Plaintiff again relies on out-of-circuit authority for the proposition that Defendants intended to avail themselves of the rights and privileges associated with conducting business in California because Defendants would "send regular profit-splits" to Plaintiff. *See* ECF No. 10 at 13:9-15 (citing an Eastern District of Michigan case). However, Ninth Circuit authority confirms that even assuming Defendants agreed to share profits, this is insufficient for a finding that Defendants availed themselves of the California forum. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (minimum contacts with California were lacking even where defendant "would receive a one-third interest in any profits from the sale of the technology, $20,000 per month, and reimbursement of his expenses to develop and adapt the technology").

Plaintiff argues that because Defendants arranged for one-time pick-up of gloves in California, they must be subject to jurisdiction here. *See* ECF No. 10 at 13:18-23. First, this one-time pick up of gloves is tangential to the issues at hand, since Plaintiff's claims do not relate to the supply of gloves but to an entirely separate product—coronavirus antigen tests. Moreover, "a defendant's transitory presence [in the forum state] will support jurisdiction only if it was meaningful enough to 'create a 'substantial connection' with the forum State.'" *Picot*, 780 F.3d at 1213. Importantly, Plaintiff does not identify any other instances in which Defendants physically entered California; thus, that "substantial connection" is lacking.

**B.      Plaintiffs' Claims Do Not Arise from Defendants' Activities in California.**

The second prong of the specific jurisdiction analysis is whether the claim arises out of or relates to the defendant's forum-related activities. *See Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1023 (9th Cir. 2017). "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or

effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. Here, Plaintiff's claimed injury does not evince a connection between Defendants and California. *See id*. As set forth in Defendants' Motion, none of the services related to the Agreement were performed in California, the products were not sold in California, and the Agreement contemplates that the products would be sourced from *international* markets for supply *outside the United States*. Thus, regardless of Plaintiff's claim that it felt the injury in California, the fact remains that Defendants' conduct does not connect them to California in any meaningful way.

### C. The Exercise of Jurisdiction in California Is Not Reasonable and Proper.

If Plaintiff meets its burden of satisfying the first two prongs of the specific jurisdiction analysis, the burden shifts to the defendant to show that exercising jurisdiction would not be reasonable. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). Because Defendants lack sufficient minimum contacts with California, the Court need not even determine whether the exercise of personal jurisdiction over it here would be reasonable. *See Baca Gardening & Landscaping, Inc. v. Prizm Vinyl Corp.*, 2008 WL 4889030, at *6 (C.D. Cal. Nov. 12, 2008). However, even if Plaintiff could establish sufficient minimum contacts, the reasonableness requirement still defeats the exercise of jurisdiction for the reasons set forth in Defendant's Motion.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that their Motion be granted in its entirety and that this action be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

DATED: May 24, 2021

Respectfully Submitted,

**MCGUIREWOODS LLP**

By: */s/ Alicia A. Baiardo*
Alicia A. Baiardo
Piper A. Waldron
Attorneys for *Specially Appearing* Defendants TannerGap, Inc. and Tanner Pharma UK Limited

## CERTIFICATE OF SERVICE

I certify that on May 24, 2021, the foregoing document entitled **SPECIALLY APPEARING DEFENDANTS TANNERGAP, INC. AND TANNER PHARMA UK LIMITED'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** was filed electronically in the Court's EFC; thereby upon completion the ECF system automatically generated a "Notice of Electronic Filing" as service through CM/ECF to registered e-mail addresses of parties of record in the case.

/s/ *Alicia A. Baiardo*
Alicia A. Baiardo