UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FS MEDICAL SUPPLIES, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>TANNERGAP, INC., and others,<br><br>    Defendants. | Case No. 21-cv-03017-NC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: ECF 5 |

Plaintiff FS Medical Supplies, LLC brings claims for breach of contract against Defendants TannerGap, Inc. and Tanner Pharma UK Limited (collectively "Tanner"). FSMS' complaint faces a motion to dismiss on the grounds that this Court lacks personal jurisdiction over Tanner. After reviewing the briefing, the Court finds that Tanner does not have sufficient minimum contacts with California for the Court to assert personal jurisdiction over it. The Court, therefore, GRANTS Tanner's motion to dismiss for lack of personal jurisdiction.

I.   **BACKGROUND**

On September 11, 2020, FSMS and Tanner entered into a Distribution Agreement for FSMS to supply coronavirus rapid antigen tests for Tanner to sell. ECF 1-1 ¶ 11. Pursuant to the Agreement, Defendants agreed to evenly split the gross profits of the coronavirus test sales. *Id.* ¶ 16. The measure of gross profits was to be the total purchase price paid by the customer minus the actual cost of the product paid to the supplier. *Id*.

FSMS alleges that Tanner breached by improperly calculating and dividing the profits from the sale to the United Kingdom Department of Health and Social Security. *Id.* ¶ 27.

On March 23, 2021, FSMS sued Tanner in the Santa Clara County Superior Court for breach of contract, conversion, breach of the implied covenant of good faith and fair dealing, breach of the implied duty to perform with reasonable care, money had and received, violation of Business & Professions Code § 17200, and declaratory relief. ECF 1-1. Tanner timely removed the action to this Court. ECF 1. Shortly thereafter, Tanner filed a motion to dismiss, arguing that this Court lacks personal jurisdiction over it. ECF 5. All parties have consented to the jurisdiction of a magistrate judge. ECF 7, 15.

## II.   LEGAL STANDARD

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff, as the party seeking to invoke the jurisdiction of the federal court, has the burden of establishing that jurisdiction exists. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When the motion to dismiss constitutes a defendant's initial response to the complaint, a plaintiff need only make a prima facie showing that personal jurisdiction exists. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). While a plaintiff cannot "'simply rest on the bare allegations of its complaint,' uncontroverted allegations in the complaint must be taken as true [and] [c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), and citing *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996)).

## III.   DISCUSSION

Tanner moves to dismiss FSMS' complaint for lack of personal jurisdiction. *See* ECF 5. In response, FSMS argues: (1) the Court has general jurisdiction; and (2) the Court has specific jurisdiction. The Court addresses each argument in turn.

Where there is no applicable federal statute governing personal jurisdiction, a district court must apply the law of the state in which it sits, to determine whether the

exercise of personal jurisdiction over nonresident defendants is proper. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). District courts in California may exercise personal jurisdiction over nonresident defendants to the extent permitted by the Due Process Clause of the Constitution. Cal. Civ. Proc. Code § 410.10. Absent one of the traditional bases for jurisdiction, the Due Process Clause requires that the defendants have "certain minimum contacts" with the forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945) (internal citations omitted).

Personal jurisdiction may be general or specific. A plaintiff may establish general personal jurisdiction by showing that the defendants had "continuous and systematic general business contacts" that approximate physical presence in the forum state." *Schwarzenegger*, 374 F. 3d at 801 (internal citations omitted). A plaintiff may also establish specific personal jurisdiction by showing, in relevant part, that the defendants purposely directed their activities or otherwise availed themself of the forum state's laws, and that the plaintiff's claims arises from the defendants' forum-related activities. *Id*. at 802. The Court first addresses general jurisdiction.

### A. General Jurisdiction

General jurisdiction exists when defendants' activities in the forum are "continuous and systematic." *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014) (quoting *Int'l Shoe*, 326 U.S. at 317). For corporate defendants, general jurisdiction exists at its "place of incorporation and principal place of business." *Id.* at 137.

FSMS argues that Tanner is subject to general jurisdiction in California. However, this argument fails. First, FSMS fails to establish that Tanner's contacts with California are continuous and systematic. FSMS merely states that Tanner's assertion that the Court lacks general jurisdiction is "wrong." ECF 10 at 1. Second, California is neither Tanner's place of incorporation nor principal place of business. ECF 1-1 ¶ 2. Rather, TannerGap, Inc. has its principal place of business and is incorporated in North Carolina, and Tanner Pharma UK Limited has its principal place of business and is incorporated in the United

3

Kingdom. ECF 5 at 3. Further, Tanner has no legal presence, has no registered agent for service of process, and pays no state taxes in California. Leonard Decl., ¶¶ 7–11; s*ee, e.g. Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1226 (9th Cir. 2011). In short, the Court finds that Tanner's contacts with California do not justify general jurisdiction. Consequently, the Court proceeds to analyze specific jurisdiction.

### B. Specific Jurisdiction

When nonresident defendants' contacts with the forum are insufficiently pervasive to subject them to general personal jurisdiction, the court must ask whether the "nature and quality" of their contacts are sufficient to exercise specific personal jurisdiction over them. *Data Disc, Inc.,* 557 F.2d at 1284. A court may exercise specific personal jurisdiction over nonresident defendants if: (1) the defendants purposefully direct their activities at the forum or perform some act by which they purposefully avail themself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the plaintiff's claim arises out of the defendants' forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two of these three elements; if the plaintiff fails, specific personal jurisdiction over the nonresident defendants is improper. *Id.* If the plaintiff satisfies the first two prongs, the burden then shifts to the defendants to present a compelling case that the exercise of jurisdiction would not be reasonable. *Id.*

#### 1. Purposeful Availment

The first prong of the specific jurisdiction test is satisfied by the defendants' "purposeful availment" or "purposeful direction." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). "A purposeful availment analysis is most often used in suits sounding in contract." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted). "A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Id.*

This is a contract dispute so the purposeful availment analysis applies. Under a

4

purposeful availment analysis, "[a] showing that defendant[s] purposefully availed [themselves] to the privilege of doing business in a forum state typically consists of evidence of the defendants' actions in the forum, such as executing or performing a contract there." *Id*. This requirement "ensures that defendant[s] will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted). When the exercise of personal jurisdiction over the defendants is based on the execution or performance of a contract, the court must "use a highly realistic approach that recognizes that a contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." *Id*. at 479 (internal citations omitted). Accordingly, to determine whether the purposeful availment requirement is met, the court must look to the contract's "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Id*.

FSMS argues that Tanner is subject to specific personal jurisdiction in California because Tanner purposefully availed itself to the privilege of doing business in California by: (1) initiating contact with FSMS, a California business; (2) linking itself to FSMS' California activities through the economic realities of the Agreement; (3) creating a joint venture with FSMS; (4) being on notice of the terms of the Agreement that legal proceedings could occur in California; and (5) profiting under the Agreement from medical products procured and located in California. The Court addresses each argument in turn.

### a. Purposeful Availment by Initiating Contact in California

FSMS argues that Tanner purposely availed itself by initiating contact with FSMS, knowing that FSMS was located in and would conduct its operations from California. ECF 10. This argument fails. First, Tanner's knowledge of FSMS' location carries little weight in a personal jurisdiction analysis. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069–70 (9th Cir. 2017). The Court "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a

forum." *Id*. Here, Tanner initiated contact with FSMS to create a "global" sales channel network. ECF 14 at 8. Moreover, FSMS and Tanner entered into the Agreement because of the connections each business brought into its respective field. Declaration of Laird Cagan ¶ 3. Specifically, "FSMS had contacts in the medical supply field for personal protective equipment and rapid diagnostic tests and Tanner had relationships with customers in over 120 countries outside the United States, including UK-DHSC, who might purchase such products." *Id*. Thus, FSMS' California location did not motivate the Agreement. To reflect this, the Agreement contains provisions for the "supply" of goods to "any country in the world outside of the United States." ECF 5-2 at 3. Further, all communication and negotiations were conducted virtually. *See* ECF 10 at 2. And although FSMS signed the Agreement in California, this is not enough to "establish jurisdiction" because FSMS' own conduct cannot demonstrate Tanner's purposeful availment. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 816–817 (9th Cir. 1988). Accordingly, the Court finds that Tanner's contact with FSMS does not establish purposeful availment.

        **b.**    **Purposeful Availment Through the Economic Realities Theory**

FSMS argues that Tanner is subject to specific jurisdiction because the "economic realities" of the Agreement inextricably link Tanner to California. ECF 10 at 8. However, this argument fails for number of reasons. First, FSMS contends that Tanner remitting payment to FSMS' California bank account links Tanner to California. However, such contact is insufficient to satisfy purposeful availment. *See Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985).

Next, FSMS alleges that Tanner's expectation to derive significant profits from FSMS' operations in California links Tanner to California. However, as addressed previously, FSMS again improperly relies on its own unilateral conduct to link Tanner to California. The unilateral activity of a plaintiff cannot confer jurisdiction. *See McGlinchy*, 845 F.2d at 816–817. Further, the Agreement confirms that "most of the work" would occur outside of the United States. *See* ECF 14 at 11. The Agreement specifically calls

6

for the sale of products outside of the United States.  *See* ECF 5-1 ¶ 12.  Thus, the language of the Agreement does not indicate that Tanner expected to derive significant profits from FSMS' operations in California.

Finally, FSMS alleges that Tanner agreeing to share profits with FSMS links Tanner to California.  FSMS reasons that the profit-sharing agreement put the parties on notice that financial success would be felt in the counterparties' jurisdiction and financial harm should be equally subject to that jurisdiction's rule of law.  ECF 10 at 9–10.  Conversely, the Agreement does not state that via the profit-sharing provision, the parties would be subject to California law.  In fact, the Agreement provides that the laws of Delaware shall apply.  ECF 5–2 ¶ 30.  Thus, by agreeing to share gross profits with FSMS, Tanner did not inextricably tie itself to California.

### c. Purposeful Availment Through the Joint Venture Theory

FSMS argues that the Agreement is sufficient to "qualif[y] as a joint undertaking," and as a result is sufficient to impute FSMS' California contacts to Tanner.  ECF 10 at 12.  This argument fails.  FSMS cites to two cases from Illinois and Louisiana to substantiate its joint venture theory.  *See id.*  These cases are not binding on this Court, and the Court declines to adopt the test.  But even applying the joint venture theory, FSMS' activities in California are not attributable to Tanner.  *See Hill v. Shell Oil Co.*, 140 F.Supp.2d 911, 914 (N.D. Ill. 2001); *see also Administrators of Tulane Educ. Fund v. Debio Holding, S.A.*, 177 F. No. CIV. A. 99-2207, 2000 WL 877015, at *3 (E.D. La. June 29, 2000).  FSMS' argument fails the test because the Agreement explicitly states that the parties are not creating a joint venture: "[n]othing in this Agreement shall be construed to create any venture or entity that is inconsistent with the Parties' status as independent contractors."  ECF 5-2 ¶ 21.  Therefore, FSMS' California contacts are not attributable to Tanner under a joint venture theory of personal jurisdiction.

//

//

//

### d.  Purposeful Availment by the Terms of the Agreement

FSMS also argues that the terms of the Agreement put Tanner on "notice that legal proceedings could occur in California." *See* ECF 10 at 12.  While this argument is more persuasive than FSMS' previous assertions, it also fails.  First, the Agreement does not contain a venue provision in the case of a dispute.  *See* ECF 14 at 13.  Further, the Agreement stipulates that Delaware laws shall apply.  ECF 5-2 ¶ 30.  Notwithstanding, FSMS argues that Tanner is still on notice because the Agreement provides that written notice shall be sent to FSMS at its California address.  *Id.* at ¶ 26.  However, this provision only slightly weighs in favor of a finding of purposeful availment.  *See Pac. Life Ins. Co. v. Spurgeon*, 319 F. Supp. 2d 1108, 1113 (C.D. Cal. 2004).  This slight favor is outweighed by all of the other purposeful availment considerations.  Consequently, the Court finds that the terms of the Agreement are not enough to prove purposeful availment.

### e.  Purposeful Availment by Profiting Under the Agreement

FSMS argues that Tanner profited from the goods and medical products procured and located in California and therefore purposefully availed itself to California.  *See* ECF 10 at 13.  However, this argument also fails.  First, FSMS alleges that Tanner purposefully availed itself by arranging one product pick-up in California.  *See* ECF 10 at 13.  While physical entry is certainly a "relevant contact," a defendant's transitory presence will support jurisdiction only if it was meaningful enough to "create a 'substantial connection' with the forum State."  *Burger King*, 471 U.S. at 475 (quoting *McGee*, 355 U.S. at 223).  Here, the transaction was limited to a single pick up; not enough to establish a substantial connection.  Moreover, as noted by Tanner, this single pick up is unrelated to the coronavirus antigen tests which are the subject of this case.  *See* ECF 14 at 14.  For these reasons, the Court finds that Tanner did not profit from goods procured in California.

Second, FSMS alleges that Tanner is subject to this Court's jurisdiction because it derived substantial profit from activities which occurred in California, failed to distribute money to a California business, and deprived California of tax revenue.  ECF 10 at 13–14.  FSMS fails to cite cases or relevant facts to support this argument.  Further, FSMS again

8

relies to its own conduct and physical presence in California. As mentioned above, "[a plaintiff's unilateral] activity is insufficient to satisfy part one of the 'minimum contacts test.'" *See McGlinchy*, 845 F.2d at 816–17. Thus, the Court finds that this argument also fails to establish purposeful availment.

In sum, FSMS has not met its burden to make a prima facie showing that Tanner has sufficient contacts with California to support the exercise of specific personal jurisdiction over it. Because FSMS did not satisfy the first prong of specific jurisdiction, the Court need not reach the second or third prongs. *See Schwarzenegger*, 374 F.3d at 802.

## IV.   CONCLUSION

Generally, a court must grant leave to amend freely, but here, leave to amend would be futile and FSMS did not request leave to amend. For both of these reasons, the Court does not grant leave to amend. Accordingly, the Court GRANTS the motion to dismiss, without prejudice, for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Dated: July 12, 2021                                             _____
                                                                                    NATHANAEL M. COUSINS
                                                                                    United States Magistrate Judge